IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| WANDA JO LENIUS AND GARY GENE LENIUS,<br><br>Plaintiffs,<br><br>vs.<br><br>DEERE & COMPANY a/k/a JOHN DEERE COMPANY, CLYDE D'CRUZ, KEVIN KEITH, BRIAN MATSON, AND ROBERT BARNES,<br><br>Defendants. | No. C12-2063<br><br>RULING ON MOTION TO DISMISS |

TABLE OF CONTENTS

I. *INTRODUCTION* ................................................ 2

II. *PROCEDURAL HISTORY* ....................................... 2

III. *RELEVANT FACTS* ............................................ 3

IV. *DISCUSSION* .................................................. 4
    A. *Can Individual Defendants be Sued Under Title VII and the ADEA?* ........................................... 5
    B. *Are Claims for Emotional Distress and Punitive Damages Recoverable Under the ADEA?* ........................... 5
    C. *Does Wanda's Defamation Claim State a Cause of Action?* ....... 9
    D. *Is Wanda's Negligence Claim Preempted by the ICRA or Otherwise Barred by the Statute of Limitations?* ... 11
    E. *Can Wanda Recover Damages which Predated Enactment of Iowa Code Section 216.6A?* ..................... 11
    F. *Can Wanda Recover "Enhanced Damages" Under Iowa Code Chapter 216?* ..................................... 15

V. *SUMMARY* ................................................... 16

VI. *ORDER* ..................................................... 16

## I. INTRODUCTION

This matter comes before the Court on the Motion to Dismiss (docket number 15) filed by the Defendants on November 12, 2012, the Resistance (docket number 16) filed by the Plaintiffs on November 16, and the Reply (docket number 24) filed by the Defendants on November 29. Pursuant to Local Rule 7.c, the issue will be decided without oral argument.

## II. PROCEDURAL HISTORY

On August 31, 2012, Plaintiffs Wanda Jo Lenius and Gary Gene Lenius filed a complaint in eight counts, alleging gender discrimination, age discrimination, and retaliation. Named as defendants were John Deere Agri Services, Inc., Deere & Company aka John Deere Company ("Deere"), Clyde D'Cruz, Kevin Keith, Brian Matson, and Robert Barnes. On October 17, Plaintiffs filed an amended complaint — identifying the same defendants[1] — in 12 counts.

On November 12, Defendants filed the instant motion, asking that the individual Defendants be dismissed from certain counts, that Plaintiffs' claims for emotional distress and punitive damages be dismissed from certain counts, that the defamation and negligence counts be dismissed, and that the Court dismiss certain damages which predated enactment of Iowa Code section 216.6A. Plaintiffs concede that the individual Defendants should be dismissed from Counts I, II, III, IV, XI, and XII. Plaintiffs also agree that their punitive damage claim in Count IV (age discrimination) should be dismissed. Furthermore, Plaintiffs agree that the negligence claim (Count X) may be dismissed. The remaining portions of Defendants' motion are resisted.

On November 26, 2012, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. In accordance with 28 U.S.C. § 636(c), and the

---

[1] Forty-five minutes later, however, Plaintiffs dismissed all claims against John Deere Agri Services, Inc. *See* docket number 11.

2

consent of the parties, the case was referred to the undersigned magistrate judge for the conduct of all further proceedings.

## III. RELEVANT FACTS

The amended complaint was filed by Wanda Jo Lenius and Gary Gene Lenius, wife and husband. According to their amended complaint,[2] Wanda started working at Deere in 2000 as a contract employee.[3] In 2001, she became a full-time employee as a supply manager specialist. Wanda was initially told that her position would be a Labor Grade 6, but before she began her duties, D'Cruz informed her that she would start at a Labor Grade 5 instead. In 2002, her job duties and responsibilities increased, but she received no increase in labor grade. In October 2003, Wanda was assigned an additional job as lead buyer for cab parts and engines, and received an upgrade to Labor Grade 6. At all other John Deere locations, however, a similar buyer position was Labor Grade 7.

At some point, Deere conducted a Global Evaluation Process to define and grade specific job functions within the corporation, and the relative value of those jobs to the corporation. In April 2004, Wanda learned that her new job title would be "SMS II." Wanda was one of only two individuals in the Product Development Process ("PDP") or Order Fulfillment Process ("OFP") which were not assigned a title of "SMS III."[4] According to the amended complaint, Wanda's efforts to transfer to a different position that would qualify her as a Labor Grade 7 were blocked. Wanda is currently on long-term disability and social security due to medical conditions that arose following the events

---

[2] For these purposes, the Court assumes the allegations are true. *U. S. ex rel Raynor v. National Rural Utilities Co-op Finance, Corp.*, 690 F.3d 951, 955 (8th Cir. 2012).

[3] Because Plaintiffs share the same last name, the Court will refer to them as Wanda and Gary.

[4] The other person designated as SMS II was Gayle Forster, who has also filed a discrimination action against Deere. *See Gayle Lela Forster, et al. v. Deere & Company, et al.*, No. 6:12-cv-2072-JSS (N.D. Iowa).

described in the amended complaint. Her former position was filled by a 28-year-old male, who began at Labor Grade 7.

Gary began working at Deere on May 28, 1974. From 1975 until 2008, he was located at the Product Engineering Center. From 2008 to date, he has been employed at the Engine Works in Waterloo. His current position is that of Project Engineer.

In September 2004, Gary was informed by his manager — Defendant Robert Barnes — that his position was being downgraded from a Labor Grade 9 to a Labor Grade 8, "four months after the same information was shared with other employees, but shortly after heated meetings between Plaintiff, Gary Lenius's wife, Plaintiff, Wanda Lenius, and the ongoing discrimination she was suffering in the company." Currently, Gary is a Labor Grade 10, but he contends this promotion was "held back for multiple years and [he] has yet to reach the labor grade status he would presently be at had he not experienced this type of retaliation."

## IV. DISCUSSION

In their motion to dismiss, Defendants make six arguments:

1. Plaintiffs' claims under Title VII and the Age Discrimination in Employment Act (ADEA) — Counts I, II, III, IV, XI, and XII — do not provide for individual liability against D'Cruz, Keith, Matson, or Barnes.

2. Emotional distress damages or punitive damages cannot be recovered under the ADEA and, therefore, Plaintiffs' claims for that relief in Counts IV, XI, and XII should be dismissed.

3. Wanda's defamation claim — Count IX — fails to state a claim upon which relief may be granted.

4. Wanda's negligence and harassment claim — Count X — is preempted by the Iowa Civil Rights Act (ICRA), or is otherwise barred by the statute of limitations.

4

5. The equal pay provision of the ICRA does not apply retroactively and, therefore, to the extent Wanda seeks damages which preceded the statue's enactment, the claim — Count VII — should be dismissed.

6. Wanda is not entitled to "enhanced damages" on her discrimination claim brought under the ICRA, and those claims — Count V — should be dismissed.

The Court will address each of the arguments in the order presented.

### A. Can Individual Defendants be Sued Under Title VII and the ADEA?

Counts I, II, and III of Plaintiffs' amended complaint allege violations of Title VII. Counts IV, XI, and XII allege violations of the ADEA. In each count, Plaintiffs seek judgment against Deere *and* the individual defendants. Defendants argue that neither Title VII nor the ADEA permit claims against individuals. In their resistance, Plaintiffs concede the point. Accordingly, the individual defendants will be dismissed from the claims brought by Plaintiffs in Counts I, II, III, IV, XI, and XII.

### B. Are Claims for Emotional Distress and Punitive Damages Recoverable Under the ADEA?

In Count IV of the amended complaint, Wanda claims age discrimination, in violation of the ADEA. In Counts XI and XII, Wanda and Gary claim retaliation in violation of the ADEA. In all three counts, Plaintiffs seek, among other things, damages for emotional distress and punitive damages. Wanda concedes in her resistance that she is not entitled to emotional distress or punitive damages for age discrimination, as alleged in Count IV. Plaintiffs argue, however, that emotional distress damages and punitive damages *are* recoverable in a retaliation claim brought under the ADEA.

Generally, the "ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress." *C.I.R. v. Schleier*, 515 U.S. 323, 326 (1995). *See also Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 809 (8th Cir. 1982) ("compensation for pain and suffering is not recoverable in ADEA actions").

5

Moreover, in *Williams v. Valentec Kisco, Inc.*, 964 F.2d 723, 729 (8th Cir. 1992), the Court determined that punitive damages are also not recoverable under the ADEA.

In their resistance, however, Plaintiffs assert that emotional distress damages and punitive damages have been allowed in ADEA *retaliation* cases. In support of their argument, Plaintiffs direct the Court to *Moskowitz v. Trustees of Purdue University*, 5 F.3d 279 (7th Cir. 1993). In *Moskowitz*, a tenured biology professor was forced to retire upon reaching the mandatory retirement age permitted by the ADEA. Nonetheless, the professor filed suit under the ADEA alleging

> the university had discriminated unlawfully against him on account of his age by denying him research funds and facilities and travel grants before his retirement. These resources, he argues, would have given him post-retirement income and it is that lost post-retirement income that he seeks to recover by this suit.

*Id.* at 280. In discussing whether entitlement to post-retirement income should be considered "legal relief" under the ADEA, the Seventh Circuit Court of Appeals noted that "[a]n exception to the narrow construal of 'legal relief' has been recognized for the case in which the plaintiff charges that he was retaliated against for exercising his rights under the age discrimination law." *Id.* at 283. In support of its observation — which was *dicta* — the Court cited *Soto v. Adams Elevator Equipment Co.*, 941 F.2d 543, 551 (7th Cir. 1991) (finding that § 216(b) of the FLSA permits emotional distress and punitive damages for retaliation), and *Travis v. Gary Community Mental Health Center, Inc.*, 921 F.2d 108, 112 (7th Cir. 1990) (finding that after the FLSA was amended in 1977, emotional distress and punitive damages are recoverable in an action for retaliation). That is, *Travis* and *Soto* interpret the second sentence of 29 U.S.C. § 216(b)[5] to authorize compensatory and

---

[5] The second sentence of § 216(b), which was added to the FLSA in 1977 when the statute was amended to include a cause of action for retaliation, provides: "Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of
(continued...)

punitive damages in retaliation cases because "legal relief" is a "term commonly understood to include compensatory and punitive damages." *Travis*, 921 F.2d at 111; *see also Soto*, 941 F.2d at 551 (discussing *Travis*).

There is a circuit split, however, regarding the availability of punitive damages in FLSA retaliation cases. In *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 933 (11th Cir. 2000), the Court determined that punitive damages are *not* available in FLSA retaliation claims under § 216(b). The Court rejected the Seventh Circuit's holding in *Travis*. *Id.* at 933. The Eleventh Circuit found that "the evident purpose of section 216(b) is compensation" and, "[t]herefore, punitive damages would be out of place in a statutory provision aimed at making the plaintiff whole." *Id.* at 934.

The Eighth Circuit Court of Appeals has not addressed whether emotional distress and/or punitive damages are available to plaintiffs in retaliatory ADEA or FLSA cases. Accordingly, the Court must determine whether the Eighth Circuit is likely to follow the Seventh Circuit's holding in *Travis* (permitting compensatory and punitive damages in FLSA retaliation cases) or the Eleventh Circuit's holding in *Snapp* (holding that punitive damages are not available in FLSA retaliation claims).[6]

The dispute remains active. In *Tucker v. Monsanto Co.*, 2007 WL 1686957 (E.D. Mo.), the Court noted that "[f]ederal circuits are divided on the issue of whether the FLSA allows for the recovery of punitive damages." The Court reviewed the holdings in *Travis*

---

[5](...continued)
this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages."

[6] The ADEA states that it will be enforced in accordance with the remedies provided in the FLSA. 28 U.S.C. § 626(b). Furthermore, the language found in the ADEA — permitting the Court to grant "such legal or equitable relief as may be appropriate to effectuate the purposes" of the Act — is identical to that found in the FLSA. *Compare* 29 U.S.C. §§ 216(b) and 626(b). Accordingly, it seems clear that if emotional distress and punitive damages are not recoverable in an FLSA retaliation action, then they are not available in a comparable ADEA action.

7

and *Snapp*, and was persuaded by the Eleventh Circuit's reasoning in *Snapp*. *Id.* at *2. The Court concluded the plaintiff was not entitled to recover punitive damages or emotional distress damages in her retaliation action brought under the FLSA. Recently, however, another district court judge in the Eastern District of Missouri reached the opposite conclusion. In *Lewey v. Vi-Jon, Inc.*, 2012 WL 1859031 (E.D. Mo.), the plaintiff sought punitive damages for retaliation in violation of the FLSA. In a motion to strike, the defendant asserted that punitive damages are not available in an FLSA retaliation action. The district court rejected the reasoning in *Tucker*, and adopted the Seventh Circuit's holding in *Travis*. *Id.* at *7 ("The Court agrees with those courts that have found that the FLSA anti-retaliation provision remedy of 'legal relief' encompasses punitive damages.").[7]

In *Fiedler*, the Eighth Circuit concluded that compensation for pain and suffering is not recoverable in ADEA actions. 670 F.2d at 809. In reaching that conclusion, the Court construed narrowly the remedies language found in the ADEA.

> Section 216(b) has never been interpreted to allow damage awards beyond those specifically enumerated in the statute.

---

[7] In their reply brief, Defendants cite additional district court cases in support of their position. Many of the cases, however, are not directly on point. For example, in *Daniels v. Pioneer Cent. School Dist.*, 2012 WL 70573 (W.D.N.Y.), the Court dismissed the plaintiff's second cause of action — alleging retaliation in violation of the ADEA — as lacking in a factual basis. The Court *then* dismissed that part of the plaintiff's complaint seeking punitive damages, noting that punitive damages are not available under the ADEA. In *McQuilkin v. Delaware River Port Authority*, 2011 WL 5325620 (D.N.J.), the plaintiff "concede[d] that he is not entitled to a recovery for emotional distress or punitive damages," seeking instead liquidated damages authorized by the statute. *Id.* at *3.

Defendants also note, interestingly, that an Illinois district court recently failed to follow the holding by the Seventh Circuit in *Moskowitz* and *Travis*. In *Smith v. Illinois Ass'n of School Boards*, 2010 WL 4293088 (S.D. Ill.), the plaintiff brought an action for discrimination and retaliation in violation of the ADEA. The defendant argued that the plaintiff was not entitled to punitive damages for his retaliation claim. Without making any reference to *Moskowitz* or *Travis*, the district court agreed and dismissed the plaintiff's claim for punitive damages. *Id.* at *3.

> Thus, damages for pain and suffering have never been awarded under the FLSA. Except for slight modifications that are not applicable here, Congress intended to incorporate fully the remedies and procedures of the FLSA. Since Congress is presumed to be aware that this provision had never allowed damages for pain and suffering, it is reasonable to say that it did not intend for such damages to be allowed under section 626(b).

*Fiedler*, 670 F.2d at 810 (internal citations omitted).

When finally called upon to address this issue, the Court believes the Eighth Circuit Court of Appeals will adopt the reasoning in *Snapp*, and extend its previous holdings regarding available damages under the ADEA to include *both* discrimination claims and retaliation claims. That is, the Court concludes that emotional distress damages and punitive damages are not recoverable under the ADEA, whether the claim is one of discrimination or retaliation. Accordingly, Defendants' motion to dismiss Plaintiffs' claims for emotional distress and punitive damages in Counts IV, XI, and XII will be granted.

### C. Does Wanda's Defamation Claim State a Cause of Action?

Next, Defendants assert that Wanda's defamation claim (Count IX) fails to satisfy the pleading requirements of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Wanda resists, and asserts the amended complaint gives Defendants reasonable notice of sufficient facts to support her claim for defamation. Alternatively, Wanda asks that she again be permitted to amend her complaint.

A pleading that states a claim for relief must contain "a short and plain statement of the claim" showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). It does not require detailed factual allegations, but it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers "labels and conclusions" or "'naked assertions' devoid of 'further factual enhancement'" will not do. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

9

In addition, to survive a motion to dismiss, a complaint must contain sufficient factual matter to show relief is "plausible on its face." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). Conclusory statements alone "do not suffice." *Id.*; *see also United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (discussing facts necessary in a complaint to survive a motion to dismiss). While on a motion to dismiss the court must accept as true the complainant's factual allegations and construe the complaint in the light most favorable to the complainant, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Wanda is correct that she is "not required to *prove* [her] case at this stage in the litigation."[8] She must state, however, some facts about what allegedly took place to give rise to her cause of action. Here, Wanda failed to identify in her complaint any *facts* that suggest Defendants have engaged in defamation. In her resistance, Wanda asserts that she "recite[s] specific and detailed facts throughout the Complaint that would allow a court to make the reasonable inference that defamatory statements were published."[9] Having reviewed Wanda's complaint, the Court finds no facts in the complaint upon which it may draw a "reasonable inference" that Defendants engaged in defamation. The complaint fails to identify what was allegedly said, who said it, who heard it, and whether it concerned or involved Wanda in any way. *See Taggart v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996) (providing the prima facie case necessary in a defamation action). While Wanda

---

[8] Plaintiffs' Brief in Support of Resistance to Defendants' Motion to Dismiss (docket number 16-1) at 5 (emphasis added).

[9] *Id.* at 4. Later, in her resistance, Wanda again argues that "[t]he facts included in [her] Complaint clearly allow for the court to draw a reasonable inference that the Defendant is liable for the misconduct alleged." *Id.* at 5.

10

need not "prove" anything, including whether such allegations are true, she must provide the Court with a factual basis for her cause of action. *Iqbal*, 556 U.S. at 678 (labels, conclusions, or naked assertions devoid of any factual entrancement will not do). Here, Wanda merely recited the legal elements of a defamation claim. This will not do. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, the Court finds that Defendants' motion to dismiss Count IX should be granted.

Wanda's request for leave to amend her Complaint is also denied. Local Rule 15 requires a party moving pursuant to FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2) or (d) to "describe in the motion the changes sought, and must electronically attach to the motion and file under the same docket entry the proposed amended or supplemented pleading." Because Wanda has failed to comply with Local Rule 15, her request for leave to amend the complaint is denied.

### D. Is Wanda's Negligence Claim Preempted by the ICRA or Otherwise Barred by the Statute of Limitations?

Defendants assert Wanda's negligence claim (Count X) fails as a matter of law because it is preempted by the Iowa Civil Rights Act (ICRA). Alternatively, Defendants assert the claim is barred by the statute of limitations. Wanda does not resist the dismissal of her negligence claim. Accordingly, Count X will be dismissed.

### E. Can Wanda Recover Damages which Predated Enactment of Iowa Code Section 216.6A?

In Count VII of her amended complaint, Wanda asserts Defendants failed to compensate her at a rate equal to her "younger counterparts," in violation of Iowa Code section 216.6A. Defendants argue that section 216.6A, which was enacted on April 28, 2009, cannot be applied retroactively, and Wanda cannot recover damages for any alleged violations prior to its enactment. Wanda argues the Statute is remedial, and may be applied retroactively.

Under Iowa law, "[l]egislative intent determines if a court will apply a statute retrospectively or prospectively." *Iowa Beta Chapter of Phi Delta Theta Fraternity v. State, University of Iowa*, 763 N.W.2d 250, 266 (Iowa 2009) (citing *Emmet County State Bank v. Reutter*, 439 N.W.2d 651, 653 (Iowa 1989)). "Generally, a newly enacted statute is presumed to apply prospectively, unless expressly made retrospective." *Id.* (citing *City of Waterloo v. Bainbridge*, 749 N.W.2d 245, 249 (Iowa 2008)); *see also State Public Defender v. Iowa District Court*, 629 N.W.2d 82, 84 (Iowa 2001) ("Legislative enactments normally operate prospectively to only affect matters occurring after the effective date of the statute."); Iowa Code § 4.5 ("A statute is presumed to be prospective in its operation unless expressly made retrospective."). However, "when the statute relates solely to remedy or procedure, a court can apply the statute both prospectively and retrospectively." *Phi Delta Theta Fraternity*, 763 N.W.2d at 266 (citation omitted); *see also Hannan v. State*, 732 N.W.2d 45, 51 (Iowa 2007) ("While most statutes are presumed to be prospective in application, remedial or procedural statutes may be applied retroactively."). On the other hand, "[a] statute that relates to a substantive right is ordinarily applied prospectively." *Phi Delta Theta Fraternity*, 763 N.W.2d at 266 (citing *Baldwin v. City of Waterloo*, 372 N.W.2d 486, 491 (Iowa 1985)).

In *Board of Trustees of Municipal Fire & Police Retirement Systems of Iowa v. City of West Des Moines*, 587 N.W.2d 227 (Iowa 1998), the Iowa Supreme Court discussed the differences between remedial and substantive rights:

> A remedial statute affords a private remedy to a person injured by a wrongful act, corrects an existing law or redresses an existing grievance, gives a party a mode of remedy for a wrong where none or a different remedy existed, or remedies defects in the common law and in civil jurisprudence generally. Substantive law creates, defines, and regulates rights, while procedural law governs the practice, method, procedure, or legal machinery by which the substantive law is enforced or made effective.

*Id.* at 231 (citations omitted). If a statute is remedial, retrospective operation is presumed, but courts must "employ a three-part test to determine if retroactive application is consistent with legislative intent." *Anderson Financial Services, LLC v. Miller*, 769 N.W.2d 575, 579 (Iowa 2009) (citations omitted). The three-part test requires a court to: 1) examine the language of the legislation; 2) consider the evil the statute seeks to remedy; and 3) determine whether there was an existing statute governing or limiting the evil that the new statute intends to remedy. *Id.* (citations omitted); *see also Board of Trustees*, 587 N.W.2d at 231 (discussing three-part test).

In arguing that Code section 216.6A is remedial, Wanda asserts:

> Iowa Code section 216.6A is a remedial statute in that it provides a private remedy by correcting and/or redressing an existing grievance as provided in Iowa Code section 216.6 and Chapter 216 which prohibits discrimination against an individual on the basis of age. Section 216.6A simply defines more specifically a form of discrimination previously protected, defining already unlawful discrimination to specifically include wage discrimination and the remedies therewith; it does not create a new substantive law.

Wanda's Resistance to Defendants' Motion to Dismiss (docket number 16-1) at 6.

In their reply, Defendants assert:

> Because Section 216.6A created, defined, and regulated a new right, an Iowa employee's right to be free from discriminatory pay practices, it is substantive. . . . Indeed, prior to the enactment of this statute, this right to be free of discriminatory pay practices did not exist under Iowa law. Neither the statutory text nor legislative history of Sections 216.6A or 216.15(9) "corrected" or "redressed" relief previously available to employees under the Iowa Civil Rights Act. Because Iowa's equal pay law is substantive, it is entitled to a presumption of prospective-only application.

Defendants' Reply Brief in Further Support of Their Motion to Dismiss (docket number 24) at 3-4.

Turning to the statute, Iowa Code § 216.6A(1)(a) explains that the Iowa legislature enacted the new statutory provision because it found wage discrimination on the basis of age to be against public policy because it discriminates against individuals, negatively impacts the general workforce, and adversely affects the general welfare of the state. *See* § 216.6A(1)(a)(1)-(7) (enumerating public policy reasons for the new statutory provision). Section 216.6A(1)(b) provides that it will be the policy of the state "to correct and, as rapidly as possible, to eliminate" such discrimination. *Id.* Section 216.6A(2)(a) provides the substantive legal framework for the statutory provision:

> It shall be an unfair or discriminatory practice for any employer or agent of any employer to discriminate against any employee because of the age . . . of such employee by paying wages to such employee at a rate less than the rate paid to other employees who are employed within the same establishment for equal work on jobs, the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

*Id.*

In examining the legislative language, the Court finds that Iowa Code section 216.6A is substantive law, and not remedial. While Code section 216.6A falls under the umbrella of Iowa's civil rights laws which prohibit discrimination on the basis of age, the statute created, defined, and regulated a new right, the right to be free from wage discrimination on the basis of age. § 216.6A(2)(a). *See Board of Trustees*, 587 N.W.2d at 231 ("Substantive law creates, defines, and regulates rights."). The statute was specifically enacted on public policy grounds to address wage discrimination in the workplace. *See* § 216.6A(1)(a)-(b). Furthermore, section 216.6A does not "correct" or "redress" any relief previously available to employees under Iowa's civil rights laws. *See Board of Trustees*, 587 N.W.2d at 231 ("A remedial statute . . . corrects an existing law or redresses an existing grievance[.] . . ."). Moreover, there is no language in section 216.6A which expressly states or implies that the legislature intended the statute to be applied retroactively. Therefore, because section 216.6A is substantive law and does not

14

expressly state that it applies retroactively, the Court concludes that the statute should only be applied prospectively, and not retrospectively. *See Phi Delta Theta Fraternity*, 763 N.W.2d at 266 (providing that "[g]enerally, a newly enacted statute is presumed to apply prospectively, unless expressly made retrospective" and "[a] statute that relates to a substantive right is ordinarily applied prospectively"). *See also State Public Defender*, 629 N.W.2d at 84 ("Legislative enactments normally operate prospectively to only affect matters occurring after the effective date of the statute."); Iowa Code § 4.5 ("A statute is presumed to be prospective in its operation unless expressly made retrospective."). Accordingly, Defendants' motion to dismiss Wanda's claim in Count VI to the extent it alleges liability for wage discrimination prior to the enactment of Iowa Code section 216.6A (April 28, 2009) will be granted.

### F. Can Wanda Recover "Enhanced Damages" Under Iowa Code Chapter 216?

In Count V of her amended complaint, Wanda asserts Defendants discriminated against her based on gender and age, in violation of the ICRA. Among other things, Wanda asks that she be awarded "[p]ast and future loss of wages, including three time [*sic*] the wage differential based on willful behavior on the part of the Defendants." Defendants argue that treble damages are not available for damages accruing prior to April 28, 2009 — the date section 216.6A was enacted.

If an employer engages in wage discrimination in violation of section 216.6A, then the employee is entitled to "[a]n amount equal to two times the wage differential paid to another employee compared to the complainant for the period of time for which the complainant has been discriminated against." Iowa Code § 216.15(9)(a)(9)(a). If the discrimination was "willful," however, then the damages may equal three times the wage differential. Iowa Code § 216.15(9)(a)(9)(b).

In Count VII, Wanda claims she was not compensated "at a rate equal to her younger counterparts," in violation of Iowa Code section 216.6A. As set forth above, the Court has concluded that she may assert a claim of wage discrimination under section

216.6A only to the extent the claims accrue after April 28, 2009. In Count V, however, Wanda's claim is more general. That is, Wanda asserts she was discriminated against as a consequence of her age and gender, in violation of Iowa Code section 216. As damages in Count V, Wanda claims, among other things, that she is entitled to "three time[s] the wage differential based on willful behavior on the part of the Defendants."

To the extent Wanda seeks treble damages for lost wage differential in Count V, it is identical to her claim in Count VII. For the reasons set forth above, the Court has concluded that section 216.6A applies prospectively only. Accordingly, she may recover for wage discrimination, including treble damages, only to the extent the discrimination occurred after April 28, 2009.

## V. SUMMARY

The Court concludes that D'Cruz, Keith, Matson, and Barnes should be dismissed from the claims brought by Plaintiffs in Counts I, II, III, IV, XI, and XII. The Court further determines that Plaintiffs are not entitled to emotional distress or punitive damages in Counts IV, XI, and XII. The Court also finds that Wanda's defamation claim (Count IX) and negligence claim (Count X) should be dismissed. The Court concludes Defendants' motion to dismiss Wanda's claim in Count VII to the extent it alleges liability for wage discrimination prior to the enactment of Iowa Code section 216.6A should be granted. Finally, the Court concludes Wanda is not entitled to treble damages for wage discrimination allegedly accruing prior to the enactment of Iowa Code section 216.6A.

## VI. ORDER

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (docket number 15) is **GRANTED** as follows:

1. That part of Counts I, II, III, IV, XI, and XII in Plaintiffs' amended complaint which asserts a claim against Defendants Clyde D'Cruz, Kevin Keith, Brian Matson, and Robert Barnes, individually, is **DISMISSED**. Those counts will proceed against Defendant Deere, only.

2. Plaintiffs' claims of emotional distress and punitive damages in Counts IV, XI, and XII are **DISMISSED**. Plaintiffs may pursue compensatory damages, only.

3. Wanda's claim for defamation (Count IX) is **DISMISSED**.

4. Wanda's negligence and harassment claim (Count X) is **DISMISSED**.

5. Plaintiffs' claim for wage discrimination (Count VII) prior to April 28, 2009 is **DISMISSED**. Plaintiffs may assert a claim for wage discrimination which occurred on or after April 28, 2009.

6. Wanda is not entitled to treble damages for wage discrimination which allegedly occurred prior to April 28, 2009.

DATED this 14th day of February, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA