## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## EASTERN DIVISION

| | |
|---|---|
| **WANDA JO LENIUS,** | |
| **Plaintiff,** | No. C12-2063 |
| **vs.** | |
| **DEERE & COMPANY,** *et al.*, | |
| **Defendant.** | |
| ------------------------------------------------- | |
| **GAYLE LELA FORSTER,** | |
| **Plaintiff,** | No. C12-2072 |
| **vs.** | **RULING ON MOTIONS *IN LIMINE*** |
| **DEERE & COMPANY,** *et al.*, | |
| **Defendants.** | |

On the 9th day of February 2015, these matters came on for hearing on the Motion in Limine filed by the Plaintiffs on January 23, 2015 and the Motion in Limine filed by the Defendants on the same date. The Plaintiffs were represented by their attorneys, Gregory T. Racette, Amy B. Pellegrin, and Patrick T. Vint. Defendants were represented by their attorneys, Frank Harty, Debra Hulett, Angel A. West, Frances M. Haas, and Ryan W. Leemkuil.

Plaintiffs' motion *in limine* has 14 numbered paragraphs. Defendants' motion *in limine* has 41 numbered paragraphs. The Court will address the issues raised by referring to the numbered paragraphs found in the motions *in limine*.

## PLAINTIFFS' MOTION IN LIMINE

1.    **Settlement Discussions.** Plaintiffs ask that Defendants be prohibited from making any reference to settlement discussions. Defendants do not resist, and make a similar request in paragraph 12 of their motion *in limine*. Accordingly, paragraph 1 is granted. Neither party shall introduce any evidence regarding settlement discussions, settlement offers, or offers to compromise.

2.    **Collateral Sources of Income.** After they left active employment at Deere, both Plaintiffs received a "salary continuance benefit" — which is similar to a short-term disability benefit — for a period of one year. When the salary continuance benefit expired, both Plaintiffs transitioned to long-term disability benefits. Both Plaintiffs are continuing to receive long-term disability benefits funded by Deere. In addition, both Plaintiffs have applied for and received social security benefits, which are ongoing.

Plaintiffs argue that these income sources may not be offset against their claim for damages. Accordingly, Plaintiffs ask that Defendants be prohibited from offering any evidence regarding these payments. Furthermore, Plaintiffs argue that even if these benefits are properly offset against their damages, that is an issue which should be addressed by the Court after the jury has returned its verdict. Defendants contend that Plaintiffs' damages are properly offset by the payments received, particularly those funded by the employer. Moreover, Defendants argue that the evidence is admissible for other purposes, such as impeachment, even if the payments are not offset against damages.

The issue in the liability phase of the trial is whether Plaintiffs' failure to be mapped to paygrade 7 when GJE was implemented was because of the work being performed by Plaintiffs, or because of age and sex discrimination. Generally, evidence regarding Plaintiffs' damages will be inadmissible during the liability phase of the trial. Accordingly, even if payments made by Deere must be offset in determining Plaintiffs' damages, that evidence would be inadmissible during the liability phase. Moreover,

because there will be no evidence of damages in the liability phase, it is difficult for me to see why it would be necessary to impeach Plaintiffs on these issues during the liability phase. Accordingly, the Court concludes that evidence regarding Plaintiffs' sources of income after leaving active employment at Deere are inadmissible during the liability phase of the trial. Admissibility of this evidence in the damages phase, and the offset of collateral sources against Plaintiffs' damages, will be discussed elsewhere.

3. **Prior Complaints of Discrimination.** In 1997, Lenius sued a former employer, claiming sexual harassment and discrimination. In a complaint filed with the Iowa Civil Rights Commission, Lenius (who at that time was known as Wanda Halverson) complained of sexual harassment, hostile work environment, and retaliation, forcing her to seek psychological and medical treatment.[1] In the petition subsequently filed by Lenius in the Iowa District Court for Black Hawk County, she claimed both sex and age discrimination.[2] Apparently, the action was dismissed in 1999. It is unclear whether there was any monetary settlement. Plaintiffs argue that evidence regarding the prior lawsuit is inadmissible. Defendants disagree.

In support of their respective positions, both parties cite *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377 (8th Cir. 2008). There, the plaintiff sued her employer, claiming she was not promoted because of her race. The defendant offered evidence at the trial that the plaintiff had filed another lawsuit six years earlier alleging discrimination by another employer. The plaintiff argued that admission of the evidence was error. On appeal, the Eighth Circuit Court of Appeals noted that "[p]rior acts include prior lawsuits" and, therefore, the issue was properly analyzed under FEDERAL RULE OF EVIDENCE 404(b). *Id.*

---

[1] *See* Exhibit E-30.

[2] *See* Exhibit E-27.

at 380. Evidence of prior acts "is not admissible to prove a person's character," but may be admissible to prove motive, intent, preparation, or plan. FED. R. EVID. 404(b).

> Evidence of prior acts may be admitted if "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the event at issue."

*Batiste-Davis*, 526 F.3d at 380 (quoting *Berry v. Oswalt*, 143 F.3d 1127, 1132 (8th Cir. 1998)).

The *Batiste-Davis* court first noted that "[o]ther courts generally do not admit evidence of prior suits unless they were fraudulently filed." *Id.* (citing cases from the First, Second, and Seventh Circuits). In the Eighth Circuit, however, "[e]vidence of a prior lawsuit may be admitted on a case-by-case basis if it meets the four requirements of this circuit's test." *Id.* In *Batiste-Davis*, the Court found that the prior lawsuit was relevant, similar, and "probably close enough in time." *Id.* (the first lawsuit was filed six years earlier). In analyzing the third requirement, however, the Court concluded that the probative value of the prior lawsuit was substantially outweighed by its unfair prejudice and, therefore, the district court abused its discretion in admitting evidence of the plaintiff's prior lawsuit. *Id.* at 381. The Court noted that "[t]he charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged, unless the previous claims made by the party are shown to have been fraudulent." *Id.* at 380-81 (quoting *Outley v. City of New York*, 387 F.2d 587, 592 (2d Cir. 1988)). The *Batiste-Davis* Court found that "[t]he probative value of the lawsuit was minimal as Lincare presented evidence of only one suit, which was six years old." *Id.* at 381.

Turning to the facts in the instant action, Defendants seek to offer evidence that Lenius filed a similar lawsuit in 1997, approximately seven years prior to her initial complaints in the instant action. I believe the facts here are virtually indistinguishable from those in *Batiste-Davis*. Defendants present evidence of only one prior lawsuit, which

was filed approximately seven years earlier. Assuming evidence of the prior lawsuit is relevant, similar, and close enough in time, its probative value is outweighed by its prejudicial effect. There is no evidence that the earlier lawsuit was fraudulently filed, and allowing its admission in the liability phase would require a "mini-trial" on that collateral issue.

I reach a different conclusion, however, regarding the admission of Lenius' prior testimony during the damage phase. In this case, Lenius claims severe emotional distress resulting from John Deere's alleged discrimination. In the earlier case, Lenius also claimed that she was forced to seek psychological and medical treatment as a result of sex and age discrimination. As I understand it, Lenius was deposed in the earlier lawsuit and testified regarding her allegations and her emotional distress. I believe that evidence is admissible on Lenius' present claim that she sustained damages as a result of John Deere's alleged wrongdoing. At the instant hearing, Plaintiffs' counsel agreed that Lenius' prior testimony regarding her treatment of similar diagnoses or complaints would be admissible, but only if Lenius first denied making those allegations while testifying at the instant trial.

The Court concludes that evidence regarding Lenius' prior discrimination lawsuit is inadmissible during the liability phase of the trial. During the damages phase, however, Defendants will be permitted to offer evidence regarding both the substance of the earlier lawsuit and the complaints of damage made by Lenius at that time. The Court withholds ruling on whether the lawsuit documents are themselves admissible until after it hears Lenius' testimony on that subject. If Lenius admits the prior suit, including the nature of the allegations, then it may not be necessary to introduce the ICRC complaint or the state court petition.

4.      **Other Legal Actions.** While the record is imprecise, Lenius was apparently injured in a car accident in 2008. At the time of hearing, her attorney referred to "a prior personal injury lawsuit involving Ms. Lenius and her father," but it is unclear to the Court

whether that refers to the 2008 car accident or some other incident. According to Defendants' counsel, Lenius was arrested in 2001 and charged with assaulting her husband. Her attorney advised the Court, however, that Lenius was found not guilty of that charge. The motion *in limine* is also apparently intended to refer to a worker's compensation claim filed by Forster following the events which give rise to the instant action, which was subsequently dismissed. Plaintiffs ask that Defendants be prohibited from offering any evidence or argument regarding these other claims.

Defendants apparently concede that evidence regarding Lenius' lawsuit following the motor vehicle accident, and the criminal charge of domestic assault, are inadmissible during the liability phase of the trial. Defendants argue, however, that evidence regarding Lenius' prior injuries is relevant to her claim for damages, and evidence regarding the domestic abuse charge is relevant to her claim that her relationship with her husband has been damaged by Deere's wrongdoing.

The Court concludes that evidence regarding Lenius' injuries sustained in a 2008 car accident may be admitted in the damage phase, without reference to the fact that she subsequently filed a lawsuit seeking damages. That is, Defendants may offer evidence regarding the accident and her alleged injuries. Defendants may not offer evidence regarding the resulting litigation, however, without first presenting the proposed evidence outside the presence of the jury, and convincing the Court that its probative value outweighs its prejudicial effect. Similarly, Defendants may offer evidence regarding Lenius' relationship with her husband. They may not offer evidence regarding the criminal charge — particularly since Lenius was acquitted — without first seeking further authorization from the Court.

It is unclear to the Court what evidence may be available regarding Forster's worker's compensation claim, and what evidence Defendants may seek to introduce at trial. The Court reserves ruling on the issue of whether evidence regarding Forster's

worker's compensation claim is admissible in the damages phase. Defendants are instructed not to offer any evidence in this regard without obtaining further authorization from the Court.

**5.     Disparate Impact Evidence.**  The parties apparently agree that this is not a "disparate impact" case. That is, Plaintiffs are not alleging that the implementation of GJE generally had a disparate impact on older women, despite its benign purpose. Instead, Plaintiffs assert that Defendants intentionally manipulated the GJE process in order to discriminate against the Plaintiffs.

Defendants do not intend to offer any evidence regarding the impact which implementation of GJE had on the class of older women generally. However, Defendants seek to offer evidence regarding the overall impact of GJE on the employees' pay grades. It is the Court's understanding that approximately 70% of Deere's employees stayed at the same pay grade, 20% were placed at a higher pay grade, and 10% per placed at a lower pay grade.[3] The Court believes that evidence regarding the overall effect of GJE on pay grades is relevant and admissible. It is the Court's understanding, however, that Defendants will not attempt to offer any evidence regarding GJE's impact on certain identified groups, such as gender or age.

In their resistance to Plaintiffs' motion *in limine*, Defendants alert the Court that not only will they present evidence regarding the number of Deere employees impacted by GJE, they may also present evidence of "the number of discrimination claims asserted in the wake of GJE."[4] That issue was not specifically addressed at the time of hearing, but the Court believes that evidence regarding "a lack of lawsuits" is not relevant to the claims being asserted by Plaintiffs here. That is, Plaintiffs do not assert that the GJE process was

---

[3] *See* Exhibit G-20.

[4] Defendants' Resistance to Plaintiffs' Motion *in Limine* at 7.

inherently discriminatory, but instead assert it was unlawfully manipulated by Defendants in this case to discriminate on the basis of age and sex. The Court concludes that evidence regarding "a lack of lawsuits" is not probative, would confuse the jury, and is inadmissible.

6. **"Same Decision" Defense.** Next, Plaintiffs ask the Court to prohibit Defendants from offering "[e]vidence that it would have taken some adverse action against Plaintiffs despite discrimination." Plaintiffs reason that because they are not pursuing a "mixed motive" case, and because Defendants have offered no evidence under a "same decision" defense, it would be "irrelevant and unduly prejudicial to Plaintiffs for Defendants to present such evidence." In response, Defendants argue this is not an evidentiary issue, but rather involves the manner in which the case will be submitted to the jury.

It is unclear to the Court what evidence Plaintiffs are attempting to exclude. Plaintiffs claim that their failure to be mapped to paygrade 7 when GJE was implemented was the result of age and sex discrimination. To rebut that allegation, Defendants intend to offer evidence regarding the manner in which GJE decisions were made. This does not appear to be a mixed motive case, nor does it appear that Defendants are asserting a same decision defense. Defendants are not precluded from offering evidence regarding how and why the decision was made to map Plaintiffs to paygrade 6 during the GJE process.

7. **EEOC Investigation.** Unfortunately, for all parties, these cases pended before the EEOC for an inordinate period of time. Both Plaintiffs filed claims with the EEOC in October 2004. The EEOC did not issue a "Determination" until June 2011, and issued right-to-sue letters in August 2012. At the time of hearing, both counsel seemed to agree that the jury must be told something about the extraordinary delay between the alleged discriminatory action and the time of trial.

In their motion *in limine*, Plaintiffs ask that Defendants be precluded from offering "[a]ny evidence that the length of the EEOC investigation was the 'fault' of any party in this matter or that any party contributed to any alleged delay in bringing this lawsuit." At the hearing, however, Plaintiffs' counsel advised the Court that Plaintiffs believed the jury should be "informed that the EEOC was involved" and that "it was a seven-year investigation." Plaintiffs also intend to offer the Determination letter "in order to give the jury the entire context as to what happened." Defendants' counsel urged the Court to tell the jury "absolutely nothing" about the EEOC. Defendants concede, however, that the jury must be told something about the undue delay.

Questions concerning the admission or exclusion of EEOC determinations are left "to the sound discretion of the trial court." *White v. Honeywell, Inc.*, 141 F.3d 1270, 1277 (8th Cir. 1998). In the exercise of its discretion, the Court must "ensure that unfair prejudice does not result from a conclusion based on a cursory EEOC review of the very facts examined in depth at trial." *Id.* When the evidence introduced at trial and the evidence underlying the EEOC decision is the same, the EEOC's findings "are minimally relevant and 'would amount to admitting the opinion of an expert witness as to what conclusions the jury should draw, even though the jury had the opportunity and the ability to draw its own conclusions.'" *Jones v. Cargill, Inc.*, 490 F. Supp. 2d 989, 993 (N.D. Iowa 2007) (quoting *Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1309 (8th Cir. 1984)). Here, the evidence provided to the jury will undoubtedly be more detailed than that obtained by the EEOC investigator. Under these circumstances, the conclusions reached by the EEOC have minimal relevance, if any.

The Court concludes that evidence regarding the submission of a claim to the EEOC, the EEOC's subsequent investigation, and the EEOC's determination are not probative to the issues which will be submitted to the jury. Accordingly, at the beginning of the liability phase, I will instruct the jury that the delay between the events underlying

Plaintiffs' claims and the trial was for reasons unrelated to the issues that they will be required to decide. I will tell the jury that they should not speculate as to the reason for the delay, should not assess any fault to either party for the delay, and should consider the claims as if the trial had occurred shortly after the events. Neither party will be permitted to offer evidence regarding the EEOC.

8. **Lack of Recollection.** It can be reasonably anticipated that some witnesses may have difficulty recalling the details of certain events due to the passage of time. Plaintiffs ask that Defendants not be permitted to "insinuate" that "their lack of recollection relieves them of liability." In support of their position, Plaintiffs cite the Court's Order regarding Defendants' laches defense in its ruling on the motions for summary judgment. Defendants argue, correctly, that the Court's ruling on the motions for summary judgment is not the last word on the issue of laches. At that time, the Court was viewing the evidence in the light most favorable to Plaintiffs. Defendants are not precluded from pursuing their laches defense at the time of trial, albeit outside the presence of the jury.

9. **Failure to Exhaust Administrative Remedies.** Plaintiffs argue that the Court's ruling on the motions for summary judgment is the "law-of-the-case" and precludes Defendants from asserting that Plaintiffs failed to exhaust their administrative remedies against the individual Defendants. Defendants assert that not only is the issue not finally resolved, but it is an issue which should be submitted to the jury. I agree with Defendants that the Court's ruling on the motions for summary judgment is not a final order. I have my doubts, however, regarding whether the exhaustion defense is properly submitted to a jury. Defendants are instructed not to offer any evidence to the jury regarding the claims submitted to the EEOC, or a possible exhaustion of remedies defense, without first obtaining authorization from the Court.

**10.    Evidence of "Similarly Situated" Employees.**  In determining whether Plaintiffs had established a *prima facie* case of age or sex discrimination — as required to defeat Defendants' motions for summary judgment — the Court found that Plaintiffs were "similarly situated" to the other buyers in PDP.  Plaintiffs claim that this is the "law-of-the-case" and Defendants cannot offer any evidence insinuating that they were not "similarly situated."  In finding that Plaintiffs had established a *prima facie* case of discrimination, the Court viewed the evidence in the light most favorable to Plaintiffs.  The rulings on the motions for summary judgment were not final orders and are not the law-of-the-case.  Moreover, the analysis of a *prima facie* case was only necessary to determine whether Plaintiffs could defeat the motions for summary judgment.  At the time of trial, Plaintiffs bear the burden of proving discrimination.  Nothing about the Court's prior rulings prohibits Defendants from offering evidence explaining why Plaintiffs remained at paygrade 6, while the other employees in PDP were placed at paygrade 7.

**11.    Adverse Employment Action.**  This issue is similar to the issue found in paragraph 10.  Plaintiffs argue that the Court's rulings on the motions for summary judgment preclude Defendants from offering any evidence that Plaintiffs did not suffer an adverse employment action.  My analysis is the same.  On the question of a *prima facie* case, the Court viewed the evidence in the light most favorable to the Plaintiffs and determined that a *prima facie* case existed.  That is a far cry from precluding Defendants from offering evidence on that issue at trial.

**12.    Michael Sellers' Claims or Lawsuits.**  Michael Sellers will be a witness at the trial.  Sellers filed a similar lawsuit against Deere, which was dismissed by me on summary judgment.  The case is now pending on appeal.  In their motion *in limine*, Plaintiffs ask that Defendants be prohibited from offering any evidence that Sellers filed a lawsuit or its current status.  At the time of hearing, Plaintiffs agreed that evidence could be offered that Sellers brought an action against Deere, but argued the jury should not be

told about the details of the claims or the status of the action. Defendants argue, on the other hand, that "the status and disposition of the cases is inherently bound up in the credibility determination."

The credibility of any witness is always an issue at trial. Sellers is not a disinterested witness. He brought a similar lawsuit against Deere, which he is now pursuing on appeal. If Defendants are permitted to ask about the status of that case, however, it may cause confusion for the jury and is potentially prejudicial. For example, if the jury is told that the case was dismissed by a judge on summary judgment, Plaintiffs would presumably want to offer evidence regarding the substance of Sellers' claim in order to show how it differs from the claim being submitted to the jury. On the other hand, a jury may speculate that because Plaintiffs' claim was *not* dismissed on summary judgment, a judge has concluded that it has merit. I believe evidence that Sellers filed a similar lawsuit against Deere is admissible to show his possible bias or prejudice. The details underlying the lawsuit and the status of the lawsuit are inadmissible, however, under RULES 402 and 403.

Apparently, Sellers also filed a worker's compensation claim against Deere. The Court is unfamiliar with the details regarding that claim. The Court finds a similar ruling should apply. That is, Defendants may elicit testimony that Sellers filed a worker's compensation claim, without offering evidence regarding the details of the claim or its disposition.

**13.    Michael Sellers' Job Performance.** Plaintiffs seek to exclude any evidence regarding Sellers' job performance, job evaluations, and job duties apart from the events relevant to the claims here. Sellers will apparently testify regarding his position in the supply management department and his personal knowledge of events associated with Plaintiffs' claims. Sellers believes he was mistreated by D'Cruz. To permit the jury to weigh Sellers' possible motives or bias, I believe Defendant is entitled to offer evidence

regarding Sellers' relationships within the department. That will necessarily include evidence regarding D'Cruz's evaluations of Sellers' work, which Sellers believes were unfair. Accordingly, Defendants will be permitted to offer evidence regarding Sellers' job performance and his perceived mistreatment by Defendants.

**14.    Michael Sellers' Medical Conditions.** According to Plaintiffs' motion *in limine*, Sellers suffers from "depression, anxiety, PTSD, and addiction." Plaintiffs argue that Sellers' medical conditions are not at issue in this matter and, therefore, the evidence should be excluded. In response, Defendants argue that Sellers' conditions occasionally create a "brain fog" and that he has "memory-related issues." While being deposed for his lawsuit, Sellers testified he taped a meeting on February 14, 2005 because he was "having a more difficult time remembering things that were occurring in meetings" at work.

As previously noted, a witness's credibility is always an issue at trial. A party may use a witness's mental condition to challenge his credibility. *Revels v. Vincenz*, 382 F.3d 870, 877 (8th Cir. 2004). The Court finds that Defendants may offer evidence which bears on Sellers' ability to perceive or recall events.

## DEFENDANTS' MOTION IN LIMINE

**1.    Damages Evidence in Liability Phase.** Defendants ask generally that the Court prohibit Plaintiffs from offering any damages evidence during the liability phase of the trial, including their alleged emotional distress, post-traumatic stress disorder, medical treatment, the fact that they have not worked for approximately ten years, and their receipt of disability benefits. Plaintiffs concede that because the Court bifurcated the issues for trial, damage evidence will not be introduced during the liability phase.

At the time of hearing, Defendants' counsel advised the Court that he had included this item in the motion *in limine* because he "wanted to get some guidance from the Court as to how we described the status of the plaintiffs." As indicated above in response to

paragraph 7 of Plaintiffs' motion *in limine*, I will instruct the jury that the trial was delayed for reasons unrelated to the issues that they will be required to decide. The jury will not be told anything in the liability phase of the trial regarding Plaintiffs' alleged injuries, medical treatment, employment status, or sources of income.

2. **Claims of Dismissed Plaintiffs.** Plaintiffs' husbands, Gary Lenius and Greg Forster, were initially named as plaintiffs in these actions. However, the Court dismissed their claims on summary judgment. Michael Sellers and Delyorce Rebouche also filed similar lawsuits, which were dismissed by the Court and are now on appeal. It is expected that Gary Lenius, Greg Forster, and Michael Sellers will testify at the trial. Defendants ask that Plaintiffs be prohibited from offering evidence regarding the "substance" of the dismissed claims. Plaintiffs do not resist the motion, but argue the Court should prohibit *any* evidence of the lawsuits.

In ruling on paragraph 12 of Plaintiffs' motion *in limine*, the Court concluded that because a witness's credibility is always an issue at trial, Defendants should be permitted to offer evidence that a witness also sued Deere. I believe, however, that the details underlying the lawsuit and the status of the lawsuit are inadmissible under RULES 402 and 403.

3. **Evidence of Retaliatory Actions.** The Court dismissed Plaintiffs' claims of retaliation on summary judgment. Accordingly, Defendants ask that Plaintiffs be prohibited from offering testimony on that issue. In response, Plaintiffs argue that "evidence of other discriminatory acts is admissible to prove discriminatory animus, even if those acts are not actionable themselves."

During the liability phase of the trial, the jury will be required to determine whether Plaintiffs' failure to be mapped at paygrade 7 resulted from age and sex discrimination, or instead was simply a function of the jobs which they were performing and the application of GJE. Evidence which is relevant to that issue will be admitted, and evidence

14

which is not relevant to that issue will not. Accordingly, evidence which is solely related to Plaintiffs' claims of retaliation (*e.g.*, the "towing incident") will be inadmissible. The Court recognizes, however, that some evidence may be relevant to the issue of discrimination and also relevant to some dismissed claim, such as hostile work environment, harassment, or retaliation. The Court cannot predict all of the evidence which may be offered by either side during the course of the trial. Accordingly, it cannot enter a comprehensive order on the motion *in limine*. When ruling on trial objections during the liability phase of the trial, the Court will be guided by the question of whether the proffered evidence is relevant to the issue of discrimination in the implementation of GJE. Generally, events occurring after GJE was implemented in May 2004 will be inadmissible in the liability phase of the trial, unless they are relevant to the issue of how decisions were made regarding GJE and why Plaintiffs were not mapped to paygrade 7.

    **4.**    **Evidence of Hostile Work Environment.** The issue here is similar to that raised in paragraph 3. My ruling is the same.

    **5.**    **Age or Sex Discrimination Other than the Implementation of GJE.** Plaintiffs' sole remaining cause of action is whether their failure to be mapped to paygrade 7 when GJE was implemented was the result of age and/or sex discrimination. That is, Lenius cannot recover for sex or age discrimination as a result of being hired in 2001 at paygrade 5, rather than paygrade 6. That does not mean, however, that evidence of that circumstance may not be relevant to the alleged age and sex discrimination which occurred in 2004. That is, Lenius claims that when she questioned D'Cruz about her failure to be hired at a paygrade 6 position, he made a reference to her husband making a "good living." I believe this evidence is relevant to the issue of D'Cruz's attitude regarding the employment of women and whether he manipulated the implementation of GJE, as alleged by Plaintiffs. Accordingly, evidence of "other alleged instances of

discrimination" may be admissible if they are relevant to the issue of whether Defendants discriminated against Plaintiffs in the implementation of GJE.

6. **Evidence of Plaintiffs' Defamation Claims.** In their response, Plaintiffs concede that evidence of Plaintiffs' defamation claims or any alleged defamatory statements regarding Plaintiffs are inadmissible in the liability phase of the trial. Paragraph 6 is granted.

7. **The Towing Incident.** Plaintiffs concede in their resistance that evidence regarding the towing incident which occurred in February 2005 is inadmissible during the liability phase of the trial. Paragraph 7 is granted for purposes of the liability phase. The Court reserves ruling regarding its admissibility in the damages phase.

8. **The EEOC's Determinations.** As discussed above in reference to paragraph 7 of Plaintiffs' motion *in limine*, the Court concludes that the EEOC's determination is only minimally relevant, if at all, to the issues which will be submitted to the jury and, therefore, may not be introduced at the time of trial.

9. **Evidence Regarding Plaintiffs' Claims with the EEOC.** Defendants ask that Plaintiffs be precluded from offering any evidence regarding the "substance" of administrative charges which they filed with the EEOC. (It should be recalled, however, that Defendants apparently want to offer evidence to the jury that Plaintiffs failed to exhaust their administrative remedies by not including the individual defendants in the caption.) For the reasons previously expressed, I conclude that evidence regarding the administrative charges filed with the EEOC is inadmissible.

10. **Evidence Regarding the EEOC's Investigation.** This issue is similar to those raised in paragraphs 8 and 9. The Court concludes that evidence regarding the EEOC's investigation is inadmissible for the reasons previously expressed.

**11.     Witness Interviews Conducted By the EEOC.**  As part of the EEOC's investigation, Shannon Lemke apparently interviewed Deere employees Jim Aten, Richard Brammer, and Michelle Wilson. It is anticipated that all three will testify at the trial. The notes apparently prepared by Lemke following her interviews with the three witnesses have been identified by Plaintiffs as Exhibit 132.  Defendants assert that the notes are inadmissible hearsay.  I agree.  In their resistance, Plaintiffs state that Exhibit 132 may be used to refresh the witness's recollections.  I agree the document may be used for that purpose if a witness is unable to recall some detail.  The document is inadmissible, however, as a trial exhibit.

**12.     Settlement Offers.**  Paragraph 12 is unresisted.  Neither party shall introduce any evidence regarding settlement discussions, settlement offers, or offers to compromise.

**13.     Alleged Statements by Dr. Hoekstra.** Paragraph 13 is unresisted. Plaintiffs must not offer any evidence of statements made by Dr. Hoekstra, including an allegation that he told Lenius that John Deere had required him to order Lenius back to work.

**14.     Brian Matson's Alleged Affair.** Paragraph 14 is unresisted. Defendants must not offer any evidence regarding an allegation that Lenius was mistreated by Matson because of an alleged affair with another Deere employee.

**15.     Alleged Ethical Breaches by Matson.** Paragraph 15 is unresisted. Plaintiffs must not offer any evidence regarding alleged ethical breaches by Matson, including an allegation that he told Lenius to tell a supplier that it was going to get the business for an upcoming project when, in fact, it had already been decided it would not.  Plaintiffs are also precluded from offering any testimony that Matson allegedly blamed Lenius for a situation in which a supplier "packed up" and left a project because Deere had hired a competitor to work on the same project.

**16.   Matson's Misdemeanor Theft Conviction.**   Paragraph 16 is unresisted. Plaintiffs must not offer any evidence that Matson was convicted of misdemeanor theft in approximately 1990.

**17.   Allegations of Wire-Tapping.**   Lenius was allegedly told by an unknown Mediacom employee that her phone was tapped, and was told by an unknown Waterloo police officer that because the phone box was ripped from her house, she "must be in a lawsuit." Plaintiffs concede that this evidence is inadmissible during the liability phase of the trial. Plaintiffs must not offer any evidence regarding the alleged phone incident during the liability phase.

Plaintiffs claim, however, that the evidence is admissible during the damages phase of the trial. Plaintiffs concede that they have no evidence to prove that the statement allegedly made by the unknown Mediacom employee was true, but assert that the evidence is not being offered "for the truth of the matter asserted." Rather, Plaintiffs argue that if the jury finds that the statements were made, and if the jury finds that Lenius believed the statements, then they may be considered by the jury in determining Lenius' damages. The Court concludes that the probative value of the evidence, if any, is far outweighed by its prejudicial effect. The jury may not be allowed to speculate, without any proof, that Defendants tapped Lenius' phone or ripped the phone box from her home. Accordingly, the evidence is inadmissible under RULE 403.

**18.   Statistical Analysis Conducted by Michael Sellers of Alleged Disparate Impact.**   Plaintiffs' Exhibit 85 consists of approximately 100 pages of charts apparently prepared by Sellers, ostensibly identifying employees in the department and describing a "normal promotional progression." The first page of the document purports to show "disparate impact." Exhibit 86 consists of 186 pages of charts prepared by Sellers and other documents. Exhibit 87 is a one-page chart, apparently identifying employees in the supply management department who reported to Brian Matson.

The Court finds that the exhibits are inadmissible. First, this is not a "disparate impact" case. Second, the documents or source of information which purportedly support Sellers' charts are not identified. Third, Sellers has not been identified as an expert witness and it is unlikely that he would qualify as an expert witness in any event. Plaintiffs cannot lay a proper foundation for the admission of these documents. Pursuant to FEDERAL RULE OF EVIDENCE 602, Sellers may testify regarding his personal knowledge of events relevant to Plaintiffs' claims of discrimination, but he will not be permitted to opine regarding any conclusions which he may have reached in that regard.

19. **Survey.** In 2003 and 2005, Deere submitted surveys to its employees, seeking feedback regarding the organization. Some of the results are marked as Plaintiffs' Exhibits 134 and 135. Among other things, the employees were asked whether the organization "inspires the best in me," how they would rate "morale," and whether employees of all backgrounds (including gender and age) have "the opportunity for development and promotions." In addition, the exhibits provide "comments, suggestions or ideas" submitted anonymously by the employees responding. The supply management department, headed by D'Cruz, consistently scored low.

Because the survey consists of anonymous responses, it is inadmissible hearsay. *Olle v. Columbia Univ.*, 136 Fed. Appx. 383, 384 (2d Cir. 2005) (finding that an anonymous survey "is clearly inadmissible hearsay under the definition of FEDERAL RULE OF EVIDENCE 801"). *See also Schrieber v. Federal Express Corp.*, 2010 WL 1078463 at *3 (N.D. Okla.) (Anonymous surveys submitted to employees regarding the performance of supervisors and managers "are irrelevant and unreliable as there is no way to identify who submitted the information and allow the Defendant a chance to cross examine those persons regarding their opinions."). In any event, because the evidence would confuse the issues and mislead the jury, I believe it is inadmissible under RULE 403.

**20. Forster's Daughter's Educational Choices.** Supposedly, Forster's daughter decided not to pursue a degree in engineering because she was unhappy with the way Deere treated her mother. Plaintiffs concede that the testimony is inadmissible during the liability phase of the trial, but argue that it is relevant in the damages phase. The Court concludes that the evidence is irrelevant and inadmissible for any purpose.

**21. Meeting with Dr. Harding and Kevin Keith.** Defendants ask that Plaintiffs be precluded from offering any testimony regarding a meeting which Sellers had with Dr. Harding and Kevin Keith on April 11, 2005. Notes which Sellers prepared in advance of the meeting are marked as Plaintiffs' Exhibit 83. In their response, Plaintiffs indicated that they did not resist paragraph 21. At the hearing, however, Plaintiffs' counsel suggested that certain portions of Exhibit 83 were "important," while acknowledging that "there are many things in here that are inadmissible." Plaintiffs' counsel suggested that parts of Exhibit 83 could be redacted.

The meeting which Sellers had with Dr. Harding and Kevin Keith took place nearly one year after GJE was implemented, and long after the mapping decisions were made. According to Exhibit 83, Sellers had a laundry list of complaints to discuss, including age discrimination. The document itself is clearly hearsay. Unless Kevin Keith made any statements regarding how GJE was implemented or why Plaintiffs were mapped to paygrade 7, the April 5 meeting is not relevant to any issues in this case. Plaintiffs must not offer any evidence regarding the April 11, 2005 meeting between Sellers, Dr. Harding, and Keith, without first obtaining further authorization from the Court.

**22. Email from Michelle Wilson to Gayle Forster.** On February 10, 2006, Michelle Sammon (apparently n/k/a Michelle Wilson) sent an email to Gayle Forster, which has been marked as Plaintiffs' Exhibit 84. Apparently, Forster contacted Wilson in preparing a response to interrogatories. Wilson first tells Forster to "[j]ust remember you are right and they are wrong!" Wilson then states that "they just did the same thing

20

again," describing personnel changes made by Stefan Zoeller. According to Wilson, "[h]e's considered Clyde's twin by some."

Plaintiffs argue that because Ms. Wilson will be testifying at the trial, they are permitted to "ask her about her own email." According to Plaintiffs' counsel, Wilson "insinuates in this email that Clyde D'Cruz had previously discriminated against women." Wilson can, of course, testify regarding her personal knowledge of events relevant to Plaintiffs' claims of discrimination. Exhibit 84 is hearsay, however, and Plaintiffs were unable to identify any exception to the hearsay rule. Moreover, the content of the email has no probative value. Exhibit 84 will be inadmissible at the trial. Furthermore, Wilson will not be permitted to testify regarding personnel changes made by Stefan Zoeller, or opine that he is "considered Clyde's twin by some."

**23. Alleged Age Discrimination Against Nancy Kohagen.** In their response, Plaintiffs state that they do not resist paragraph 23. At the hearing, Plaintiffs' counsel also stated that they do not intend to introduce Exhibit 81. Plaintiffs suggested that if Defendants present evidence of the "lack of lawsuits," then it opens the door to show other EEOC complaints, such as that made by Kohagen. The Court has previously ruled that evidence regarding "lack of lawsuits" will not be permitted. Accordingly, paragraph 23 is granted. Plaintiffs must not offer any evidence regarding Kohagen or Exhibit 81.

**24. WWCA Audit.** In early 2002, an internal audit revealed that there was a "gap in the knowledge of supply mgmt. employees based on position moves & lack of training." The auditor concluded that the problem was of "major" severity. Plaintiffs assert the audit is relevant to their claims of age discrimination. Defendants argue that the audit makes no mention of age, does not suggest age discrimination, pre-dates the implementation of GJE by approximately two years, and is irrelevant to the issues remaining in this case.

Plaintiffs claim that D'Cruz discriminated against them based on their age and sex when he reorganized the supply management department, and when decisions were made regarding mapping under GJE. Plaintiffs will be permitted to introduce evidence regarding changes made after D'Cruz came to the supply management department in 2000. Presumably, that evidence will include D'Cruz's hiring, promotion, and transfer decisions. As I understand it, the internal audit notified D'Cruz on May 6, 2002 that there was a "knowledge gap" in the department "based on position moves & lack of training."[5]

While Plaintiffs will be permitted to offer evidence regarding D'Cruz's decisions regarding reorganization, hiring, promotions, and transfers, it does not necessarily follow that the internal audit is admissible. Apparently, the internal audit makes no mention of age and is not suggestive of age discrimination. Instead, the audit attributes the lack of knowledge to "position moves" and a "lack of training." Defendants argue that "the jury would have to resort to sheer speculation to determine that the 'gap in knowledge' was attributable to age discrimination." I agree. The audit does not refer to age, is not suggestive of age discrimination, and has no relevance to the issues in this case. Even if the audit has minimal relevance, admission of the evidence would confuse the issues and mislead the jury. Accordingly, the evidence is inadmissible under RULES 402 and 403.

**25. Alleged Cause of the "Gap in Knowledge."** Paragraph 25 also refers to admissibility of the WWCA audit. My ruling is the same. Because it does not mention age or suggest age discrimination, Defendants must not offer any evidence regarding the internal audit.

**26. Communications with Samuel Allen.** Apparently, both Lenius and her husband had email communications with Samuel Allen, Deere's Chairman and CEO.

---

[5] In their brief, Defendants refer to pages 88-91 of Plaintiffs' Trial Exhibit 6. However, the hard copy of Exhibit 6 provided to the Court by Plaintiffs' counsel consists of only two pages.

Defendants ask that Plaintiffs be prohibited from offering any evidence regarding those communications. Plaintiffs do not resist paragraph 26, unless Defendants "open the door" by offering evidence regarding any "investigation" performed by corporate Human Resources. Paragraph 26 is granted. Defendants must not offer any evidence regarding communications with Samuel Allen, without first obtaining further authorization from the Court.

27.     **An Employee Named "Mel."** On May 6, 2004, Kevin Keith sent an email to Clyde D'Cruz regarding a meeting which was scheduled for the following day. *See* Plaintiffs' Exhibit 82. The "subject" of the email is identified as "Selection Process." The body of the email refers to "Mel," who was apparently under consideration for a position in D'Cruz's department. Mel was apparently 53 years old and was hoping to transfer to Waterloo because his wife had been hired as a school principal. Keith opined that "it's not all bad to have an experienced person like him as part of your core group. He can provide stability and experience to some of your numerous younger people." Later in the email, Keith suggested that Mel was "probably not planning to retire soon" and added: "I would caution you in using a broad brush in painting people like him as being not worth investing in or that they carry 'baggage.'"

Defendants argue that the hiring of Mel had no connection to the mapping of Plaintiffs' positions pursuant to GJE. At the time of hearing, Defendants characterized it as a "stray comment" that has no relevance here. I disagree. I believe the exhibit is relevant to Plaintiffs' claim that D'Cruz considered older workers "as being not worth investing in or that they carry 'baggage.'" Paragraph 27 is denied.

28.     **HIPAA Violations, "Forgeries," or Other Misconduct in Forster's Worker's Compensation case.** In their response, Plaintiffs concede that evidence regarding alleged HIPAA violations and "forgeries" in relation to Forster's worker's compensation claim are inadmissible in the liability phase of the trial. Plaintiffs argue,

however, that the evidence is relevant and admissible during the damages phase. Plaintiffs must not offer any evidence regarding the alleged HIPAA violations and forgeries in the liability phase of the trial. The Court reserves ruling on whether the evidence is admissible during the damages phase.

29. **Sellers' and Forster's Complaints to OSHA.** Defendants ask that Plaintiffs be prohibited from offering any evidence regarding a complaint filed with OSHA by Sellers in May 2005 and a complaint filed by Forster with the Department of Labor in May 2006. Paragraph 29 is unresisted. Plaintiffs must not offer any evidence regarding the complaints in 2005 and 2006.

30. **Self-Generated Histories or Timelines.** Plaintiffs have identified as trial exhibits a number of self-generated "timelines" or "histories." *See* Exhibits 12-14, 27-29. Plaintiffs agree that these documents cannot be introduced as trial exhibits and go back to the jury. Plaintiffs note, however, that they may be used to refresh a witness's recollection. The Court agrees the documents may be used for that purpose if the witness first states that he or she is unable to recall the answer to the question, is then given an opportunity to review the document, and is then able to testify from their refreshed recollection after the exhibit has been removed.

31. **Forster's Gross Negligence Allegations.** After she stopped actively working at Deere, Forster filed a worker's compensation claim. Plaintiffs' Exhibit 30 is an 8-page document prepared by Forster, described as a "History of Gross Negligence Allegations." The analysis here is the same as that set forth above. Exhibit 30 will not be admitted as a trial exhibit. It may, however, be used to refresh a witness's recollection, if necessary.

32. **Kevin Keith's Investigation.** Defendants ask the Court to prohibit Plaintiffs from offering any evidence regarding any investigation conducted by Keith into Plaintiffs' complaints of discrimination. (Defendants note that Plaintiffs have previously complained about Keith's *failure* to investigate.) Defendants argue that "[t]his trial is not about

24

whether Defendants responded appropriately to Plaintiffs' complaints; it's about the mapping of Plaintiffs' positions pursuant to GJE." Plaintiffs argue that evidence regarding the "thoroughness of the investigation" is admissible to determine whether the investigation "was done to actually remedy and address the complaints or solely done to cover up the discrimination." Plaintiffs assert that this is relevant to the issue of punitive damages.

The Court is not entirely clear regarding the "investigation" to which the parties refer. Defendants specifically complain, however, regarding Plaintiffs' trial Exhibits 25 and 55-63. Exhibit 25 is an email from Lenius to Keith, dated July 9, 2004. Lenius refers to a possible upcoming reorganization of the PDP group, and complains about her failure to obtain an upgrade when GJE was implemented. Exhibits 55-58 are a series of email exchanges between Kevin Keith and Forster. Exhibits 59-63 are what purport to be transcripts of meetings involving Keith and Forster on April 26, May 24, June 8, and August 20, 2004, and some other unidentified date. In the proposed final pretrial order, Defendants assert the transcripts are inaccurate and misleading. The Court also notes that its copies of the exhibits are highlighted.

As the Court has stated repeatedly, the issue remaining at trial is whether Defendants discriminated against Plaintiffs in failing to map them at paygrade 7 when GJE was implemented. To the extent an email from Keith reflects the "how and why" of Plaintiffs' failure to get a paygrade promotion, it is admissible. If an email simply responds to Plaintiffs' complaints, however, or reflects an attempt to accommodate Plaintiffs after the fact, it is inadmissible. It appears that Exhibits 25 and 55-58 fall in the latter category. For the most part, they are simply emails where Keith and Forster are attempting to set up a meeting. The Court concludes that Exhibits 25 and 55-58 are irrelevant and inadmissible.

Regarding the purported transcripts, it appears that one meeting took place immediately prior to implementation of GJE, and the other meetings took place after. Plaintiffs are permitted to offer evidence regarding statements made by Keith, if any, regarding the GJE mapping decisions. To the extent the meetings address other issues, however, they are irrelevant. Furthermore, admission of the evidence would confuse the issues and mislead the jury. Accordingly, even if an adequate foundation could be established for the transcripts, the evidence is inadmissible under RULES 402 and 403, unless Keith is speaking to the GJE decisions.

**33. Forster's Vacation Requests and Travel Authorization.** As I understand it, Forster claims that Matson treated her differently with respect to vacation requests and travel authorization. Defendants argue that this did not constitute an "adverse employment action" and is not relevant to the remaining issues in the case. Plaintiffs argue that even if the acts are not actionable in themselves, they are evidence that Matson was "treating Ms. Forster differently than her younger and male counterparts." The Court finds that the evidence is relevant. Paragraph 33 is denied.

**34. Destruction of Forster's Personal Property.** After she was no longer actively working at Deere, some of Forster's personal property was destroyed in what she believes was an act of retaliation. It is the Court's understanding that Deere subsequently reimbursed Forster for that loss. Plaintiffs concede that evidence in this regard is inadmissible during the liability phase of the trial, but argue the evidence may be admitted during the damages phase. Plaintiffs must not offer any evidence regarding the "property destruction incident" during the liability phase of the trial. The Court reserves ruling on whether the evidence will be admitted during the damages phase.

**35. Evidence Regarding Michael Grady.** Michael Grady is a retired Deere employee who will testify at trial. According to Plaintiffs, he "will testify to his personal knowledge and direct observations while he was employed in supply management."

Defendants assert that Grady, who retired in 2005, did not report to D'Cruz or Matson and has no personal knowledge of these events. The Court cannot resolve that dispute in a motion *in limine*. Pursuant to RULE 602, Grady's testimony will be limited to his personal knowledge.

**36.    Promotion of Rachelle Beuter.** Rachelle Beuter (a 26-year-old female) was a buyer on the PDP side of supply management. As I understand it, GJE mapped Beuter's position to an SMS II position, at grade 6. Before GJE was implemented, however, she was moved to the OFP side of supply management at paygrade 7. Defendants argue that Beuter's promotion is not relevant to Plaintiffs' claim of age and sex discrimination. I disagree. In determining whether Plaintiffs suffered from discrimination when remaining at paygrade 6, rather than receiving a paygrade promotion, the jury may consider all of the personnel changes being made at about that time. Paragraph 36 is denied.

**37.    Lenius' Promotion in 2003.** At the hearing, Defendants' counsel withdrew paragraph 37 of the motion *in limine*. Accordingly, the parties are permitted to offer evidence regarding Lenius' promotion in 2003.

**38.    Post-GJE Communications Regarding any Investigation into Mapping Decisions.** This paragraph is directed to Plaintiffs' Exhibits 72-77. Some of the exhibits are simply emails from Linda Hibben (an employee in Deere's Human Resources department) seeking information, and appear to have little probative value. Exhibit 75, however, appears to be two spreadsheets reflecting a "Commodity Analysis for SMS I, II, III." I do not know when the document was prepared or by whom. Depending on the foundation laid for the exhibit, it appears to be admissible. Similarly, I believe Plaintiffs' Exhibit 76 is relevant and admissible, although the Court notes parenthetically that it principally supports Defendants' position.

Defendants must not offer Plaintiffs' Exhibits 72-74 or 77 without further approval from the Court. Plaintiffs' Exhibits 75 and 76 appear to be admissible, providing the

necessary foundation is established. (Curiously, when identifying Exhibits 75 and 76 in the proposed final pretrial order, Plaintiffs identify them as "damages phase" exhibits.)

39. **Recently Disclosed Documents.** In their brief, Defendants argue that "[i]f the Court grants Plaintiffs' motion to exclude evidence based on alleged late disclosures of documents, the Court should also exclude documents recently disclosed by Plaintiffs." Specifically, Defendants refer to Plaintiffs' Exhibit 87, which is a one-page power point-like chart showing seven employees ostensibly working under Brian Matson. The Court has previously determined that Exhibit 87, prepared by Sellers, is inadmissible.

40. **Age-Related Comments by D'Cruz.** Defendants ask the Court to prohibit Plaintiffs from offering statements allegedly made by D'Cruz that "we need to get all these old farts out of here" and that older employees have "too much baggage" and are "no good for us." I believe these statements are not merely "stray comments" and are relevant to the issue of whether Defendants discriminated against Plaintiffs based on their age. Paragraph 40 is denied.

41. **Laches.** This issue has been discussed above. The Court will consider Defendants' equitable defense of laches after the trial, if necessary. Regarding the extraordinary delay between the events underlying this action and the trial, I will instruct the jury that the delay between the events underlying Plaintiffs' claims and the trial was for reasons unrelated to the issues that they will be required to decide. I will tell the jury that they should not speculate as to the reason for the delay, should not assess any fault to either party for the delay, and should consider the claims as if the trial had occurred shortly after the events. The jury will not be told that Plaintiffs submitted a claim to the EEOC, the EEOC investigated the claims, or the determinations made by the EEOC following its investigation.

## *ORDER*

IT IS THEREFORE ORDERED that Plaintiffs' Motion in Limine (docket number 149 in *Lenius* and docket number 139 in *Forster*) and Defendants' Motion in Limine (docket number 152 in *Lenius* and docket number 144 in *Forster*) are **GRANTED in part** and **DENIED in part**, as set forth above.

DATED this 13th day of February, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA